# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>GEORGIE ELAINE RUSSELL,<br><br>Defendant. | No. CR 20-45-GF-BMM<br><br>**ORDER** |

## BACKGROUND

The Court sentenced Georgie Elaine Russell ("Russell") to an 84-month term of incarceration for a drug-related offense on March 3, 2021. (Doc. 59.) Russell filed a compassionate release request on December 21, 2021. (Doc. 61.) The Court granted Russell's motion, in part, and reduced her sentence to 66 months on March 8, 2022. (Doc. 70.) Russell again moved the Court for a grant of compassionate release and/or a further sentence reduction on February 21, 2023. (Doc. 71.) Russell filed a supplemental brief on June 26, 2023. (Doc. 79.) The Government opposed the motion. (Doc. 80.) The Court deferred ruling on Russell's second motion for compassionate release until Russell submitted evidence of her completion of RDAP. Russell submitted a notice of her completion of RDAP on August 30, 2023. (Doc.

1

84.)

Russell has now served approximately 40.5 months, or 61 percent, of her reduced sentence. Russell's scheduled release date is January 14, 2024. *See* Inmate Locator, www.bop.gov/inmateloc (last visited September 18, 2023). Russell is incarcerated at Waseca FCI in Waseca, MN. *Id.* Russell has asked the Court to release her to home confinement upon completion of Board of Prisons ("BOP")'s Residential Drug Abuse Program ("RDAP"). (Doc. 81 at 2.)

## I. Availability of Relief Under 18 U.S.C. § 3582

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). The First Step Act amendments to 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 3582(c)(1)(A) prove relevant to Russell's motion.

Where a motion for a sentence reduction is well taken, a court may modify a term of imprisonment following a finding that "extraordinary and compelling reasons warrant such a reduction." *Id.* When deciding whether to reduce a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a) ("§ 3553(a)"), and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)–(2).

Congress has not defined the circumstances that rise to the level of

"extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the Sentencing Commission to issue a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *Aruda*, 993 F.3d at 800.

Section 1B1.13 of the United States Sentencing Guidelines, titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"), provides a policy statement for motions filed by the BOP director. Notably, the Sentencing Commission has not amended the Policy Statement since passage of the First Step Act. *See United States v. Haynes*, 456 F. Supp. 3d 496, 507 (E.D.N.Y. 2020); *Brown*, 411 F. Supp. 3d at 448. The "Commentary" to the Policy Statement lists five "Application Notes," the terms of which evidence the Policy Statement's inapplicability to the § 3582(c)(1)(A) as amended in the First Step Act. *See* USSG § 1B1.13 n.1–5. Note 1 lists those circumstances that qualify as "extraordinary and compelling," including the defendant's medical condition, age, family circumstances, and "Other Reasons." *Id.* n.1(A)–(D). The "Other Reasons" subdivision to Note 1 provides as follows: "As determined by the Director of [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* n.1(D) (emphasis added). Notes 4 and 5 likewise "speak plainly

3

to the BOP's exclusive gate-keeping authority pre-[First Step Act]." *Haynes*, 456 F. Supp. 3d at 508. Note 4 provides, for example, that a "reduction under this policy statement may be granted *only* upon motion by the Director of the [BOP] pursuant to 18 U.S.C. § 3582(c)(1)(A)." USSG § 1B1.13 n.4 (emphasis added).

The pre-First Step Act Policy Statement does not account for the removal of BOP's sole authority over sentence reduction petitions and the extension to defendants of the right directly to move for a sentence reduction. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Policy Statement instead contemplates only motions filed by the BOP Director. *Id.*; *see also* USSG § 1B1.13.

The Ninth Circuit recognized the inapplicability of U.S.S.G. § 1B1.13 to direct motions for a sentence reduction: "[T]he Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Aruda*, 993 F.3d at 802. The statements set forth in U.S.S.G. § 1B1.13 "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)). The Policy Statement "does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020). The Court will considers factor outside those listed in the Policy Statement to

4

determine whether extraordinary and compelling circumstances compel a reduction in Russell's sentence.

The Court recognizes the amendments to USSG § 1B1.13 that are scheduled to take effect on November 1, 2023. "The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions." United States Sentencing Commission, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*, at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf. The amendments provide that:

> Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> (1) Medical Circumstances of the Defendant.—
>
>   . . .
>
>   (B) The defendant is—
>     (i)   suffering from a serious physical or medical condition,
>     (ii)  suffering from a serious functional or cognitive impairment, or
>     (iii) experiencing deteriorating physical or mental health because of the aging process,
>     that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
>   (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious

>   deterioration in health or death.
>
> (D) The defendant presents the following circumstances—
>     (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>     (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>     (iii) such risk cannot be adequately mitigated in a timely manner.

United States Sentencing Commission, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index*, at 1–2.

The defendant must also show that she "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" to receive relief. Section 3142(g) requires the Court to consider, among other things, "the nature and circumstances of the offense" of conviction and "the history and characteristics of the person, including . . . the person's character [and] physical . . . condition." 18 U.S.C. § 3142(g)(1), (3)(A).

## II. Whether Russell has Demonstrated Extraordinary and Compelling Reasons.

Russell still must demonstrate that extraordinary and compelling reasons support a reduction of her sentence. *United States v. Maumau,* No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *5 n.3 (D. Utah Feb. 18, 2020). The Court ordered the prior reduction of Russell's sentence based primarily on the risk COVID-19 posed

6

to Russell's health given her obesity, history of smoking, and potential autoimmune disorder. (Doc. 70 at 6–8.) Russell's new motion for compassionate release cites additional health concerns including the following: (1) a broken finger that has failed to heal properly due to Raynaud's syndrome and (2) failure to properly address Russell's Raynaud's syndrome and unknown autoimmune disease. (Doc. 79 at 4.) Russell urges the Court to release her to home confinement on the basis of her completion of RDAP, health conditions, and concerns about COVID-19. (Doc. 71 at 2, 4–6; Doc. 79 at 4. Doc. 81 at 1.) Russell further cites her completion of vocational and treatment programming. (Doc. 71. at 21–24.) The Government's opposition to focuses on Russell's failure to complete RDAP before filing her second compassionate release request. (Doc. 80 at 7–8.) The Government also argues that Russell's medical conditions fail to justify a sentence reduction, that Russell not proffered evidence of inadequate medical treatment, and that a further reduction would prove inconsistent with the seriousness of Russell's offense. (*Id.* at 5–6, 8.)

Russell enrolled in RDAP on December 23, 2022. (Doc. 81-1.) Russell completed RDAP on August 23, 2023. (Doc. 83-1.) Russell also has obtained an Accounting Services certificate from the U.S. Career Institute in October 2022. (Doc. 71 at 21.) Russell completed FCI Waseca Women's Relationships Program in November 2022 and the facility's THRESHOLD Evidence Based Recidivism Reduction Program in February 2023. (*Id.* at 22–24.) Russell's completion of

7

RDAP renders moot the Government's central objection to Russell's compassionate release request.

Russell additionally provides evidence of multiple health concerns. Bloodwork repeatedly has confirmed the presence of autoimmune disease indicators. (Doc. 71 at 11–12, 14–15; Doc. 79-3 at 64–66, 100–101.) Russell has Raynaud's syndrome and reports slow-healing finger injuries. (Doc. 79 at 1, 4, 6–7, 11, 27–31, 72–73, 92.) Russell has been diagnosed with the following mental health conditions: Major Depressive Disorder, Anxiety Disorder, Unspecified Trauma- and Stressor-Related Disorder, and Sleep Terrors [night terrors]. (Doc. 79-3 at 36, 103.) Russell alleges that she has long COVID and possesses concerns about continuing COVID-19 health risks in detention. (Doc. 71 at 4–6.) Russell finally highlights reports of inadequate conditions of confinement at Waseca FCI. (Doc. 81 at 3; Doc. 81-2; Doc. 81-3.)

The Court determines that Russell has demonstrated extraordinary and compelling reasons to reduce further her sentence. The Court already reduced Russell's sentence by 18 months, from 84 to 66 months. (Doc. 70.) The Court issued the previous compassionate release Order approximately 16 months ago. (*Id.*) Reducing the sentence comports with the § 3553(a) sentencing factors in light of the new evidence that Russell has submitted to the Court.

Russell's health conditions support a sentence reduction. Russell's significantly elevated antibody levels indicate potential autoimmune disease,

8

including possible "primary biliary cholangitis (PBC), systemic autoimmune rheumatic diseases, polymyositis/dermatomyositis, systemic lupus erythematosus (SLE), juvenile SLE, [] neuropsychiatric SLE," and "systemic sclerosis." (Doc. 71 at 11–12; Doc. 79 at 77–79.) A test from August 17, 2022, determined Russell's antibody levels to be 1:1280. (Doc. 79 at 77–79.) A test result between 1:40 and 1:80 indicates low antibody levels, while a result of 1:80 or above indicates elevated antibody levels. (*Id.*) Russell has not received a diagnosis or treatment despite multiple requests for follow-up. (*See, e.g.*, Doc. 71 at 14–15; Doc. 79-3 at 65.) Russell's medical reports further indicate that she has been awaiting a rheumatology consultation since at least January 25, 2022. (Doc. 79-3 at 37.)

The Court further credits Russell's concerns about the conditions at Waseca FCI. The DOJ Office of the Inspector General ("OIG") conducted an unannounced inspection of Waseca FCI from January 30, 2023, to February 4, 2023. The OIG issued a report about the facility on May 10, 2023. The report's findings about Waseca FCI include "serious facility issues affect[ing] the conditions of inmate confinement" and "significant staffing shortages." (Doc. 81 at 6.) These considerations prove sufficient to justify an additional sentence reduction of approximately 5 months. Russell shall be released to home confinement at the residence of her grandmother.

### III. Whether Russell has Demonstrated that She is not a Danger to the Safety of Another or to the Community.

As for Russell's dangerousness, her record shows she does not pose a danger

to the safety of another or to the community. She will be placed on supervision following her release. Russell does have a significant criminal history, but the criminal history appears to be primarily incident to her substance use. This includes the offense for which she is serving her sentence. No recent disciplinary history or history of corrective action from the BOP appears to exist for Russell. (Doc. 79-2 at 2.) Russell further has participated in substantial rehabilitative programming while at BOP. Russell completed 500+ hours of UNICOR prison-based industries, Drug Education, continuing education ACE/First-Step Act programming, enrolled in the National Federation of Professional Trainers exam, and currently is involved in Prison Assist with Service Animals Program. (Doc. 68 at 18.) *See Pepper v. United States*, 562 U.S. 476, 490 (2011) ("evidence of post-sentencing rehabilitation may be highly relevant to several of the §3553(a) factors that Congress has expressly instructed district courts to consider[.]"). Russell also has successfully completed the BOP's 500-hour RDAP program. (Doc. 83, 84.) With appropriate conditions of supervision, she will not pose a danger to others.

Accordingly, **IT IS ORDERED**:

1. Russell's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 71) is **GRANTED**.

2. Russell will be placed at the Great Falls Pre-Release Center on 10/03/2023 and will remain there until 01/14/2024, as a Bureau of Prison inmate, where she will work towards securing employment and on an appropriate release

plan for her term of supervised release.

3. Russell must provide the Court with the complete address where she will reside upon release from the Great Falls Pre-Release Services, Inc.

4. The United States Probation Office shall review Russell's conditions of supervised release and consult with counsel for both parties about modifications, including but not limited to a term of home confinement.

DATED this 19th day of September 2023.

_____
Brian Morris, Chief District Judge
United States District Court